## CALLUM *v.* RICE.

1. FINDINGS OF FACT—PROOF OF SERVICES RENDERED.—This court rarely disturbs a finding of fact by a master in an equity cause concurred in by the Circuit Judge.   Where a party claimed compensation for services rendered during a period of eighteen years to a person now deceased, without any evidence of an agreement during all that time, this court approved the finding of the court below, that the claim was not established.
2. PAYMENT BY WILL.—A declaration of an intention to compensate by will for services performed, is not an acknowledgment of indebtedness, which may be enforced against the intestate estate of the declarant.
3. IBID.—QUANTUM MERUIT.—Nor can it be relied on to imply a contract in an action claiming remuneration in the nature of a *quantum meruit.*

Before WITHERSPOON, J., Union, March, 1891.

This was a claim by J. A. L. Thomas, presented against the intestate estate of Salina Sartor in the case of Margaret Callum *et al.* against S. M. Rice, jr., administrator, *et al.*   The master's report was as follows:

The undersigned, to whom it was referred to take testimony and report upon the claim of J. A. L. Thomas, presented in the above stated case, begs leave to report: That I have taken the testimony which is herewith filed.   J. A. L. Thomas presented claim for services rendered, improvements erected on plantation, supplies furnished, and money paid for Salina Sartor, commencing in 1870 and extending up to and including the year 1887,

the year in which the said Salina Sartor died. Said claim amounts to $1,313.52. The administrator of Salina Sartor denies the account, pleads the statute of limitations, and presents a counter-claim amounting to $2,250. .

It appears from the testimony, that Salina Sartor owned two tracts of land, one of which was conveyed to her by her father, Thomas Sartor, by deed, dated December 15, 1876, which tract appears to be the tract on which Salina Sartor resided, prior to and subsequent to said deed, with her father up to the date of his death in 1883, and upon which she continued to reside up to her death. It also appears from the testimony, that J. A. L. Thomas came, about the year 1867, to the place conveyed by Thomas Sartor to Salina Sartor on the 15th December, 1876, and lived with the family of said Thomas Sartor up to his death, and after his death continued on the place and occupied the house with said Salina Sartor up to her death in 1887. Said Thomas became the owner of a tract of land adjoining the lands of said Salina Sartor, and during all these years farmed his land and also lands, or a part of the lands, of said Salina Sartor, and had control of the place. A great deal of testimony was offered as to the value of services of said Thomas and his stock, the value of improvements erected, the value of supplies furnished, and the amount of money paid by him for the use of the said Salina Sartor.

I find, as a matter of law: That all items of the account presented prior to the year 1883 are barred by the statute of limitations.

I find, as a matter of fact: The testimony offered does not, by any means, satisfy me that the claim is a just and valid one. On the contrary, I am satisfied that it should not be allowed. The testimony shows, that during all the years, from 1870 to 1887, J. A. L. Thomas farmed the lands of Salina Sartor, lived in her house, ate at her table, sold her crops, had control and management of all her property, she merely deriving a livelihood from the use of the places. There are no credits upon the account, and no statement of crops sold was exhibited at the hearing. It appears that during all that period not a single settlement was had between the parties. There is no proof whatever of a con-

tract between the parties, that Salina Sartor was to be charged with any of the items of the account.

Testimony was introduced to show that about a year or eighteen months before the death of Salina Sartor, and during an illness, she desired to make a will and to devise to said J. A. L. Thomas one of her tracts of land as remuneration for services rendered. It appears, however, that she abandoned that intention, as, after her recovery from said illness, she lived a year or eighteen months, died intestate, leaving no acknowledgment in writing of any indebtedness whatever to said J. A. L. Thomas; nor does it appear that she, in the presence of any one, acknowledged any indebtedness.

There was no testimony offered at the hearing upon the counter claim held by the administrator, and I find that there is nothing due thereon.

The Circuit decree, omitting its statement of the case, was as follows:

The master is sustained by the evidence in his findings as matter of fact. The evidence is insufficient to sustain the counterclaim set up by the defendant, S. M. Rice, jr., as administrator, and this is the only ground upon which said defendant excepts to the report. No evidence was introduced to sustain the exception of James A. L. Thomas, that the master was *functus officio* at the date of the filing of his report. The master did not err, as alleged in the exceptions of James A. L. Thomas, in holding that the items of the account prior to 1883 are barred by the statute of limitations. The declarations of Salina Sartor to the witness, J. M. Gee, are relied upon under the authority of *Thompson and wife* v. *Gordon*, 3 Strob., 196, to take the case out of the operation of the statute, but I do not think that the case cited is applicable.

There is no evidence of any *written* acknowledgment or promise by Salina Sartor to pay any of the items embraced in the account, as required by section 131 of the Code. It does appear from the testimony, that some twelve or eighteen months before her death, and during her illness, Salina Sartor did send for Mr. Gee to *write her will*, and did express her intention to give James A. L.

Thomas one of her tracts of land as compensation for services rendered upon the place since the war. In this conversation Salina Sartor stated to Mr. Gee that she had always promised James A. L. Thomas to *remunerate him at her death*, and that she wished to *leave* the other tract of land to Thomas Nance (who had been a laborer on the place), *as she had partly raised him.* These declarations merely indicated an intention upon the part of Salina Sartor to make provision *in her last will* and testament for James A. L. Thomas and Thomas Nance on account of services rendered on the place. Salina Sartor was too sick to make her will at the time she made the declarations to Mr. Gee. She recovered, lived twelve or eighteen months afterwards, without executing her intention to provide for James A. L. Thomas at her death.

It appears that Thomas cultivated land adjoining the Sartor place, while he lived on the Sartor place. The evidence shows that Salina Sartor was a hard-working, economical, industrious woman. If Thomas *intended* to charge Salina Sartor with the items embraced in his account, it is difficult to understand why he should have postponed a settlement until after the death of Salina Sartor, as he had *entire control* of the place *and disposed of the crops* for a number of years prior to the death of Salina Sartor. The fact that Thomas did not present his account for more than a year after the death of Salina Sartor, and not until after the "sale of the land for partition," is also significant. Clear and satisfactory proof should be required in establishing a claim of this character against an intestate estate. I concur with the master in concluding that the proof is not sufficient to establish the claim of J. A. L. Thomas as a valid demand against the estate of Salina Sartor.

It is therefore ordered and adjudged, that the exceptions of the defendant, S. M. Rice, jr., as administrator, and of James A. L. Thomas, to the master's report, filed December 19th, 1890, are overruled. That the claim presented by James A. L. Thomas *should not be allowed*, and that the master's report is hereby confirmed and made the judgment of the court.

J. A. L. Thomas and S. M. Rice, jr., administrator, appealed.

*Mr. D. A. Townsend*, for Rice.

*Messrs. J. C. Wallace* and *T. B. Butler*, for Thomas.

March 23, 1892.   The opinion of the court was delivered by

MR. JUSTICE MCGOWAN.   Thomas Sartor owned two small tracts of land, and lived on one of them with his wife and daughter Salina.   In 1864 he made a deed of gift of one of them to Salina, who, being unmarried, lived with her father.   About 1870, one J. A. L. Thomas came into the Sartor family in some way not fully explained, but having no family himself, and becoming the owner of a small tract of land adjoining the Sartors, it was probably considered more convenient for him to live with them.   At all events, it seems that he took up his residence there, and farmed his own land, as also part of the Sartor lands, and had general control.   This state of things continued until 1883, when Thomas Sartor died, leaving his daughter Salina the only member of the family, and the owner of both the little tracts of land, her father having made her a deed of gift in 1876 of the home tract of land.

After the death of the father, no change whatever was made, but things went on as before until 1887, when Salina died, never having been married, and intestate.   S. M. Rice, jr., administered upon her personal estate, which being very insignificant, he instituted proceedings to have the lands sold (both tracts) in aid of the personalty in paying the debts of the estate.   After the lands were sold, but before the proceeds of sale were paid out, James A. L. Thomas, on January 2, 1889, under permission given by order of the court, presented an account against the estate of Salina Sartor for $1,313.53 for services rendered, improvements made upon the premises of Salina Sartor, supplies furnished and money paid for Salina Sartor, from the year 1870 to and including the year 1887.   The itemized account is stated in "the Case." The defendant, S. M. Rice, jr., as administrator, made a general denial, interposed the plea of the statute of limitations, and set up a counter-claim for board, &c., amounting to $2,250.

It was referred to the master, James Munro, Esq., to take the testimony and report upon the claim.   Much testimony was taken,

and the master made a clear, lucid report (which is not long, and should appear in the report of the case) The master found as matter of law, that all items of the account presented prior to the year 1883 are barred by the statute of limitations. And as matter of fact, he found "that the testimony does not by any means satisfy him that the claim is a just and valid one. On the contrary, he is satisfied that the same should not be allowed. The testimony shows that during all the years, from 1870 to 1887, Mr. Thomas farmed the lands of Salina Sartor, lived in her house, ate at her table, sold her crops, had control and management of all her property, she merely deriving a livelihood from the use of her place. There are no credits upon the account, and no statement of crops sold was exhibited at the hearing. It appears that during all that period (seventeen years), not a single settlement was had between the parties. There is no proof whatever of a contract between the parties, that Salina Sartor was to be charged with any of the items of account. * * * Testimony was introduced to show that about a year or eighteen months before the death of Salina Sartor, and during an illness, she desired to make a will and to devise to said J. A. L. Thomas one of her tracts of land, as remuneration for services rendered. It appears, however, that she abandoned that intention, as, after her recovery from said illness, she lived a year or eighteen months and died intestate, leaving no acknowledgment in writing of any indebtedness whatever to said J. A. L. Thomas; nor does it appear that she, in the presence of any one, acknowledged any indebtedness," &c.

Upon exceptions to this report, the case was argued before his honor, Judge Witherspoon, who concurred with the master in concluding that the proof was not sufficient to establish the claim, and made the master's report the judgment of the court. From this decree the appellant appeals to this court upon eighteen distinct grounds of appeal, which, being in the Brief, need not be restated here. Exceptions 1, 5, 16, and 17 of Thomas raise questions of law which will be considered in their order. All the other exceptions, without making special reference to them, relate only to questions of fact, in which the Circuit Judge concurred with the findings of the master.

This case is really in the nature of an action at law of Thomas against the administrator Rice, as upon an *indebitatus assumpsit* for the value of alleged services, improvements, &c., in which the findings of fact below are somewhat like the verdict of a jury, which this court has not the power to review or reverse. But as it arose in a proceeding in equity, we will give the appellant the benefit of having it considered as an equity case. While this court may review and reverse findings of fact in an equity case, it is perfectly well settled that it will rarely disturb a finding of fact in which the Circuit Judge concurs with the master. Some such rule is well nigh a necessity. There must be an end to controversy. We have, however, carefully read the testimony in the case, and we cannot say that the findings are unsustained by the evidence, or that there was sufficient evidence to support a recovery. It is not seriously contended in the case that there was any express contract to pay a particular amount for the services, &c., for the claim is only for the alleged value of the services. It strikes us as beyond the range of probability, that there could have been ever the intention on the one side to charge for the services, and on the other to pay for them, without any reference to the subject for eighteen years, and until the party most deeply concerned was dead.

Exceptions 5 and 16 relate to the claim of Thomas, that Miss Salina Sartor, some twelve or eighteen months before her death, when she was very sick and had sent for Mr. Gee to write her will, "admitted to him (Gee) a liability to Mr. Thomas for what he had done on the place. She said that she owned two tracts of land about the same size; that one tract she wished to leave Thomas Nance, as she had partly raised him, and the other to J. A. L. Thomas, as he had been living with them on the place ever since the war, had kept the place up, and done everything on the place, and she thought the place would not compensate him for what he had done. She had always promised him that she would remunerate him at her death, &c., &c." Fairly construed, this was a declaration to a third party as to what she *then* intended to do for Mr. Thomas *by will*. But the will was not then written. Miss Sartor got well of that attack

of sickness, and lived some twelve or eighteen months after, and *then died intestate.*

Principally, we suppose, from the fact that she left no will, the master, the judge concurring, found as a matter of fact that she had abandoned the intention previously expressed to Mr. Gee in reference to her will, leaving at her death "no acknowledgment in writing of any indebtedness whatever to said Thomas; nor does it appear that she, in the presence of any one, acknowledged any indebtedness." I have no doubt that one may, for a good and valuable consideration, make a binding contract to do a certain thing upon a future contingent event, and that in such case the statute of limitations does not begin to run until the action accrues; that is to say, until the event happens upon which the contract becomes enforcible, as in *Thompson* v. *Gordon*, 3 Strob., 198, and *Price* v. *Price*, Chev. Eq., 167. But in reference to dispositions by will, a party may change his mind. There is no proof of an express contract in this case to compensate Thomas by will. The generous and voluntary expression of such intention at one time being no contract might be changed, and in this case (as found) was actually changed.

But in exception 16, the point is made, that Miss Sartor's abandonment of her intention expressed to Gee, "gave Thomas a right of action commencing at her death." That is to say, as I apprehend it, the law would not allow her to abandon such intention once expressed, but would *imply such a contract* to pay by a provision of her will. This claim, as presented, is not based on a specific contract, express or implied, to pay by a provision of her will, but it is substantially an action upon a *quantum meruit* for the value in money of the services rendered. Nothing is said in the account sued on about its becoming due at the death of Miss Salina Sartor, or being payable then in a legacy or devise. The precise point was ruled in *Hunter* v. *Hunter*, 3 Strob., 521, "that the law will not imply a contract to pay for services rendered to the executrix by a legacy at her death; nor will such a contract be admitted in evidence to sustain a count in general *indebitatus assumpsit* for services rendered the testatrix" (or intestate).

This makes it unnecessary to consider the application of the

statute of limitations, for as no express contract to pay by will has been proved, or can be *implied by law*, there is nothing to prevent the statute from running as in ordinary cases.

The judgment of this court is, that the judgment of the Circuit Court be affirmed.